FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*3:50 pm, Oct 13, 2026*
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00901-NYW-SBP

CHRISTOPHER BACA

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.

Defendant.

**PLAINTIFF'S OPPOSED MOTION TO SET A RULE 16 SCHEDULING CONFERENCE AND ENTER A SCHEDULING ORDER**

Plaintiff Christopher Baca ("Plaintiff"), proceeding pro se, respectfully submits this Opposed MOTION to Set a Rule 16 Scheduling Conference and Enter a Scheduling Order, and states as follows:

## I. INTRODUCTION

Plaintiff Christopher Baca, proceeding pro se, respectfully moves this Court, pursuant to Fed. R. Civ. P. 16(b) and D.C.COLO.LCivR 16.1, for an order setting a scheduling conference at the Court's earliest practicable date, directing the parties to confer under Fed. R. Civ. P. 26(f) and submit a proposed scheduling order, and establishing a schedule for discovery and further proceedings. This action commenced on February 11, 2026, in the District Court for Adams County, Colorado. UPS removed the action to federal court on March 5, 2026, before answering

the complaint. More than seven months after removal, no scheduling order has been entered. UPS's partial motion to dismiss [Doc. 26] and motion to stay discovery in part [Doc. 45] remain pending.

Despite Plaintiff's requests and expressed interest in proceeding expeditiously, UPS has requested that scheduling await rulings on the pending motions. UPS has not proposed a date for a Rule 26(f) conference or a timetable for discovery planning, and has not substantively addressed Plaintiff's requests to discuss how its proposed discovery restrictions would account for the factual overlap between the challenged claims and the remaining claims. A scheduling conference would provide an opportunity for the Court to address the scope and timing of discovery in light of those motions, establish defined deadlines, and reduce the risk that continued delay will impair witness recollections and the timely collection of evidence.

Plaintiff remains willing to participate in a Rule 26(f) conference and work with UPS to prepare a proposed scheduling order identifying any matters on which the parties disagree. Because Plaintiff contends that UPS has mischaracterized his conduct and submitted inaccurate certificates of conferral, Plaintiff requests that the Rule 26(f) conference be audio-recorded by agreement, with the recording available to all participants, or alternatively conducted in person at the courthouse under the Court's supervision with an authorized court recording. A complete and accurate record would help document the parties' positions and conferral efforts and guard against further mischaracterizations.

## II. LEGAL STANDARD

Fed. R. Civ. P. 16(b)(2) requires a scheduling order as soon as practicable and, unless the judge finds good cause for delay, no later than the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared. D.C.COLO.LCivR 16.1 provides for a scheduling conference to develop that order and requires the removing party to file the proposed scheduling order unless the parties agree otherwise. Because UPS removed this action, that filing responsibility rests with UPS. A party may seek this relief by motion under Fed. R. Civ. P. 7(b)(1), subject to D.C.COLO.LCivR 7.1(a)'s conferral requirements.

## III. ARGUMENT

*A. A scheduling conference is warranted despite the pending partial motions.*

More than seven months have elapsed since UPS removed this action, yet no scheduling order has been entered setting deadlines for discovery or further proceedings. The parties have exchanged initial discovery, and UPS has answered the claims outside its partial dismissal request. The pleadings and initial exchange provide a sufficient basis to identify the disputed issues and prepare a meaningful schedule. Rule 16(b)(2)'s requirement that scheduling occur as soon as practicable supports setting a conference to determine how this case should proceed. UPS's partial motion to dismiss addresses Counts I, III, and IV. It does not seek dismissal of Count II, Title VII retaliation; Count V, CADA retaliation; or Count VI, intentional infliction of emotional distress. [Doc. 45 at 2–3, ¶¶ 5–6.] Even if the partial motion is granted in full, those three claims would remain outside its disposition. UPS expressly states that it "is not opposed to reasonable discovery into the remaining three claims." [Doc. 45 at 8.] That stated position supports establishing deadlines for discovery relevant to those claims.

A scheduling conference would also permit the Court to address UPS's pending stay request and its alternative proposed discovery limits. The Court can determine which discovery may proceed, whether phased discovery is appropriate, and what deadlines should apply consistently with its disposition of that motion. UPS's concerns about burden can be evaluated against identified discovery needs under Rules 26(b)(1) and 26(c), while a scheduling order provides a defined framework for the case.

*B. The retaliation and IIED claims require evidence overlapping the underlying sexual-misconduct complaints.*

UPS's own reply recognizes the relevance of the underlying sexual-harassment allegations to retaliation. In discussing protected activity, UPS argues that demonstrating a reasonable good-faith belief that Plaintiff opposed discrimination "necessarily requires him to provide details about the alleged sexual harassment he claimed to have experienced." [Doc. 34 at 5.] The underlying complaints and supporting evidence therefore cannot be excluded from discovery solely because they also relate to claims UPS seeks to dismiss. The content of Plaintiff's complaints, the evidence supporting his belief, management's knowledge, and UPS's investigative and disciplinary responses bear on protected activity, causation, retaliatory intent, and pretext. Those factual issues overlap even though the claims have distinct legal elements. Any discovery restrictions should account for that overlap and preserve access to evidence independently relevant to the retaliation claims.

Count VI likewise presents discovery needs beyond the claims targeted for dismissal. Plaintiff alleges sexual favoritism and a pervasive sexualized workplace environment, followed

by repeated investigations that allegedly disregarded the evidence he supplied and concealed or minimized the reported misconduct. Plaintiff further alleges a prolonged interrogation, threats or references to possible felony issues, a trespass notice, and termination following administrative charge activity. [Doc. 14, ¶¶ 15–36, 99–103.] Whether UPS disregarded or concealed evidence, escalated discipline in response to protected complaints, or acted with intent or reckless disregard for the resulting distress requires examination of the relevant records and testimony. Targeted discovery into interview notes, investigation attachments, internal communications, disciplinary decision materials, and the testimony of investigators and decisionmakers would address those allegations. Such evidence can inform both retaliation and IIED. A scheduling conference would permit the parties to identify these shared factual issues and propose proportionate discovery directed to them.

*C. Unresolved production and conferral issues make court-directed planning necessary.*

UPS's July 11, 2025 CCRD position statement describes the Harrell investigation and states that, during the October 2024 investigation, Tim Hackmeyer reviewed prior ethics reports and interviewed Plaintiff, Joni Medhus, Paige Morgan, Thomas Hunter, and Troy Morgan. UPS has produced investigative narratives and typed interview notes, but Plaintiff disputes the accuracy, completeness, and impartiality of those accounts. UPS has characterized Plaintiff's subsequent complaints as unsubstantiated while deeming workplace-violence allegations against him substantiated based on statements from managers he had reported for retaliation—including UPS Labor management's characterization of Plaintiff as fitting the profile of a workplace shooter—which Plaintiff disputes as unsupported by credible evidence. Plaintiff has repeatedly

requested the complete, nonprivileged investigative materials, including evidence submitted, relevant objective data, and communications supporting those findings.

UPS emphasizes that it produced approximately 1,052 pages through the Initial Discovery Protocols. [Doc. 45 at 8.] However, much of that production consists of Plaintiff's hiring records or documents Plaintiff supplied, including the collective bargaining agreement and UPS policies, which UPS designated "Confidential." The production of investigative narratives and typed interview notes does not resolve Plaintiff's requests for the underlying evidence, including relevant timecard and dispatch data needed to compare management's accounts with objective records. Plaintiff also questions the authenticity and completeness of certain investigative documents. UPS's most recent supplementation appears to reproduce previously produced investigative documents in different formats, while the report of Plaintiff's 2022 Harrell complaint reflects a 2024 modification date. These circumstances leave unresolved when the underlying records were first created, who created or revised them, what changes were made, and whether the produced accounts accurately reflect contemporaneous investigative records. Plaintiff seeks targeted, nonprivileged discovery of the underlying source records, including native files where applicable, associated creation and modification metadata, available revision or audit histories, and testimony explaining how and when those records were created, revised, and exported for production. These questions bear on the chronology and reliability of the investigations and UPS's explanations for the challenged employment actions. Without the supporting materials, Plaintiff cannot meaningfully evaluate what evidence UPS considered, whether its accounts accurately reflect that evidence, or how it reached its stated findings. UPS

also relies on grievance-panel outcomes that it describes as finding no contractual violation based on Plaintiff's testimony, yet has not provided the requested recordings or transcripts of that testimony or the company briefs presented at those hearings.

Without those records, Plaintiff cannot meaningfully examine the evidence considered, UPS's representations to the panels, or the basis for the conclusions UPS invokes. These unresolved questions further support setting a Rule 16 scheduling conference and entering a scheduling order so that discovery can proceed under defined deadlines. Plaintiff disputes UPS's characterizations of his conduct and complaints in the CCRD proceedings and this litigation. The underlying investigative and grievance records are necessary to test those characterizations against the evidence actually received and considered. UPS's reliance on summary conclusions and adverse descriptions of Plaintiff does not resolve the factual disputes concerning his protected complaints, the adequacy of the investigations, or the reasons for the challenged employment actions. Those disputes underscore the need for a schedule permitting examination of the supporting records and testimony.

Plaintiff's efforts to confer have not produced a workable discovery plan. On October 4, 2026, Plaintiff requested UPS's position and counsel's availability concerning a scheduling conference and reiterated his willingness to participate in a Rule 26(f) conference and prepare a proposed scheduling order. UPS's October 7 response requested waiting for rulings on the dismissal and stay motions. On October 12, counsel stated: "The Court will set a scheduling conference when the Court is ready to do so. UPS will not make or join in any motion to set a scheduling conference." That response provided no availability for conferral and did not address

Plaintiff's requests to discuss the factual overlap between the claims or the discovery independently relevant to Count VI.

UPS has characterized Plaintiff as unwilling to accept reasonable discovery limits based in part on his opposition to an extension and an amended answer. [Doc. 45 at 4.] Those litigation positions do not establish an unwillingness to discuss particular discovery needs or appropriate limits. Plaintiff has repeatedly expressed willingness to discuss relevant topics, witnesses, production needs, and sequencing. UPS's characterizations do not answer how its proposed restrictions would preserve access to evidence relevant to the remaining retaliation and IIED claims. Rule 26(f)(2) makes counsel and unrepresented parties jointly responsible for arranging the conference and attempting in good faith to agree on a proposed discovery plan. Plaintiff therefore requests defined deadlines for conferral and submission of a proposed scheduling order identifying any unresolved disagreements. Plaintiff also requests an agreed audio recording of the Rule 26(f) conference, available to all participants, or a Court-supervised alternative with an authorized recording. Plaintiff remains willing to participate in the manner directed by the Court.

*D. Continued delay materially prejudices Plaintiff's ability to develop and present the remaining claims.*

The disputed events include complaints dating to 2022 and investigations conducted in 2024. Relevant testimony concerns what witnesses reported, what evidence investigators received, what managers knew, and why particular dispatch and disciplinary decisions were made. UPS itself identifies former employees whose testimony may concern the disputed events. [Doc. 45 at 9.] Further delay increases the risk of fading recollections and difficulty locating

witnesses, particularly where the underlying interview notes and supporting investigative materials remain disputed or missing.

That prejudice is especially significant because UPS relies on investigative conclusions and grievance outcomes that Plaintiff cannot fully examine without the supporting records and testimony. Continued delay leaves those accounts untested while increasing the risk that the evidence needed to evaluate them will become more difficult to obtain. A defined schedule would permit Plaintiff to examine the factual basis for UPS's representations and develop evidence concerning protected activity, retaliatory intent, pretext, and the conduct underlying Count VI. The relevant evidence includes timecard and dispatch data reflecting Plaintiff's assignments and those of similarly situated drivers, underlying investigation records and supporting materials, and testimony from Plaintiff, management, investigators, and other relevant witnesses. This evidence would permit comparison of Plaintiff's and management's accounts against the objective records concerning dispatch practices, investigations, and disciplinary decisions. Prompt planning for preservation, collection, supplementation, and appropriate depositions would reduce the risk that further delay impairs development of an accurate factual record.

Plaintiff alleges continuing psychological injury and significant financial harm and seeks compensation for lost earnings, benefits, and earning capacity. [Doc. 14, ¶¶ 103–104.] Plaintiff further contends that UPS continues to deny him the opportunity to return to work in any capacity, resulting in ongoing financial losses. Continued delay postpones adjudication and any available relief while leaving Plaintiff without a defined timetable for obtaining the evidence

necessary to present his case. These financial and psychological circumstances compound the practical burden of prolonged litigation.

Plaintiff's interest in proceeding expeditiously and the potential prejudice from delay are recognized considerations when evaluating a discovery stay. See String Cheese Incident, LLC v. Stylus Shows, Inc., No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Together with the evidentiary concerns described above, these circumstances support establishing a defined schedule for discovery relevant to the remaining claims. A scheduling conference would permit the Court to account for the pending motions, consider appropriate discovery limits and sequencing, prioritize relevant records and key witnesses, and establish deadlines for addressing disputes. Plaintiff therefore requests a prompt conference and a defined schedule that permits the case to proceed while reducing further prejudice from delay.

## IV. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court set a Rule 16 scheduling conference at its earliest practicable date; establish deadlines for the parties to confer under Rule 26(f) and prepare a proposed scheduling order; direct UPS, as the removing party, to file the proposed scheduling order under D.C.COLO.LCivR 16.1 unless otherwise agreed or ordered; and enter a scheduling order governing discovery and further proceedings, subject to any discovery limitations the Court determines appropriate in light of the pending motions.

Plaintiff also requests that the Court address his request for an agreed audio recording of the Rule 26(f) conference or a Court-supervised alternative with an authorized recording, and

establish a process for resolving any remaining scheduling and production disputes. Plaintiff remains willing to confer in the manner directed by the Court.

Respectfully submitted,

Dated: October 13, 2026

s/ Christopher Baca

Christopher Baca
12294 Karls Ln
Northglenn CO 80241
720-322-3778
Doctorpepper313@gmail.com
Plaintiff, pro se

## CERTIFICATION RE: USE OF GENERATIVE ARTIFICIAL INTELLIGENCE ("AI") FOR DRAFTING

I, Christopher Baca, certify that generative artificial intelligence was used to assist in drafting this filing. I further certify that I have personally reviewed this document for accuracy, including all cited legal authorities, and that all legal and factual statements are true and correct to the best of my knowledge.

## CERTIFICATION OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiff certifies that on October 4, 2026, he contacted UPS's counsel by email regarding this proposed motion, requested UPS's position and counsel's availability, and expressed willingness to confer under Rule 26(f) and prepare a proposed scheduling order. On October 7, UPS's counsel requested that scheduling await rulings on the pending dismissal and discovery-stay motions. Plaintiff responded that a scheduling conference remained necessary and reiterated his willingness to confer. On October 12, counsel stated that the Court would set a conference when ready and that "UPS will not make or join in any motion to set a scheduling conference." In light of those responses, Plaintiff understands UPS to oppose the requested relief and submits this motion as opposed. Plaintiff remains willing to confer in the manner directed by the Court.

s/ Christopher Baca

Christopher Baca
12294 Karls Ln
Northglenn CO 80241
720-322-3778
Doctorpepper313@gmail.com
Plaintiff, pro se

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2026, I served a true and correct copy of the foregoing **PLAINTIFF'S OPPOSED MOTION TO SET A RULE 16 SCHEDULING CONFERENCE AND ENTER A SCHEDULING ORDER** via email to the following counsel of record for Defendant:

Audrey Chastain and Marcus Collins of SNELL & WILMER

achastain@swlaw.com

mcollins@swlaw.com

s/ Christopher Baca

Christopher Baca
12294 Karls Ln
Northglenn CO 80241
720-322-3778
Doctorpepper313@gmail.com
Plaintiff, pro se